UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

UNITED STATES OF AMERICA,

        Plaintiff,

v.                                                  Case No. 18-cr-69-pp

CHRISTOPHER L. CHILDS,

        Defendant.

---

**ORDER DENYING DEFENDANT'S MOTION TO REOPEN DETENTION HEARING (DKT. NO. 61)**

---

On September 9, 2019, the defendant signed a plea agreement admitting that for at least six years, he engaged in sex trafficking that involved force, threats of force, fraud and coercion. Dkt. No. 47. The offense to which the defendant pled guilty carries a mandatory minimum sentence of fifteen years and a maximum of life. Id. at ¶6. The defendant appeared before this court and entered that plea on October 3, 2019. Dkt. No. 51. The court scheduled the sentencing hearing for May 21, 2020 but subsequently removed that hearing from the calendar because the judges of the Eastern District suspended all in-person hearings as a result of the COVID-19 crisis. Dkt. No. 60.

The defendant first appeared before Magistrate Judge Nancy Joseph on March 29, 2018; Judge Joseph concluded that "[b]ased on the allegations, the court does not feel that there are conditions or a combination of conditions which will assure the safety of the community." Dkt. No. 3. She found that the

1

defendant's "abuse of his victims is borderline 'torture' for long periods of time." Id. She ordered the defendant detained pending trial. Dkt. No. 4.

Count Five of the second superseding indictment charged the defendant with trafficking a juvenile in violation of 18 U.S.C. §§1591(a)(1), 1591(b)(1) and 1591(b)(2). Dkt. No. 18 at 5. Under 18 U.S.C. §3142(e)(3)(E), the court must presume that there is no condition or combination of conditions that will reasonably assure the appearance of the defendant or the safety of the community for a defendant charged with such an offense. A defendant may rebut that presumption.

The caption of the defendant's motion asks the court to "reopen" the detention hearing that took place before Judge Joseph over two years ago. Dkt. No. 61. But that is not the relief requested in the body of the motion—there, the defendant asks the court to release him temporarily under 18 U.S.C. §3142(i)(4). That statute says that where a defendant has been ordered detained, the judicial officer has the discretion "by subsequent order" to "permit the temporary release of the person . . . to the extent that the judicial officer determines such release to be necessary for preparation of the person's defense or for another compelling reason." The defendant argues that the following constitutes a compelling reason for the court to grant him temporary release:

> The heightened risk to [the defendant] because of his current medical conditions of asthma, chronic back pain, high blood pressure, high cholesterol, gastroesophageal reflux disease, degenerative disc disease, chronic glomerulonephritis, hypertriglyceridemia, gynocomastia, degenerative disc disease, and

sleep apnea, and . . . the conditions at the Waukesha County Jail. . . .

Dkt. No. 61 at 2. He asks to be released "until this [COVID-19] pandemic has ended," id., and proposes to live with his with his daughter (whom he also proposes as a third-party custodian) with home detention and no contact with victims or witnesses, id. at 22.

The government asserts that §3142(i) doesn't apply to the defendant, because he no longer has a pending trial. Dkt. No. 64 at 4. Other district courts in the Seventh Circuit have found, as the government argues, that "18 U.S.C. § 3143, not § 3142, applies to the release or detention of a defendant pending sentence or appeal." United States v. Young, No. 2:18-CR-21-2-TLS-APR, 2020 WL 2092837, at *2 (N.D. Ind. April 30, 2020) (citing 18 U.S.C. §3143; United States v. Hartsell, Nos. 3:19-CR-14, 3:20-CR-9, 2020 WL 1482175, at *1-2 (N.D. Ind. Mar. 25, 2020); United States v. Johnson, Case No. 2:17-CR-20489, 2020 WL 1821099, at *2 (E.D. Mich. Apr. 10, 2020)).

Section 3143 concerns "release or detention *pending sentencing*," and says that the court must detain a defendant for whom the government will recommend a term of imprisonment unless the judicial officer finds by clear and convincing evidence that the person is not likely to flee or pose a danger to the community. More to the point of this case, the statute says that where a person has been found guilty of an offense described in §3142(f)(1)(A) ("a crime of violence, *a violation of section 1591*, or an offense listed in section 2332b(g)(5)(B) for which a maximum term of imprisonment of 10 years or more is prescribed"), the court must detain the defendant unless the judicial officer

3

finds that (a) there is a substantial likelihood that a motion for acquittal or new trial will be granted or that the attorney for the government has recommended no prison sentence, *and* (b) the judicial officer finds by clear and convincing evidence that the defendant is not likely to flee or pose a danger to someone else or the community. (The court's emphasis).

The defendant has been found guilty of a violation of section 1591. There is no likelihood that a motion for acquittal or new trial will be granted. The government is recommending a prison sentence. Dkt. No. 47 at ¶22. Under §3143, the court must detain the defendant, regardless of risk of flight or dangerousness.

That said, the defendant's motion is based on the COVID-19 crisis. The defendant argues that the pandemic, his underlying health conditions and the conditions at the Waukesha County Jail combine to create the "compelling reason" for temporary release under §3142(i). Even if the court agreed with the defendant that §3142(i) applied, it disagrees with his analysis.

The parties filed the plea agreement in November 2019. At that time, most Americans were unaware of the "new coronavirus" or "COVID-19." As the court writes this order at the end of May 2020, it feels absurd to have to explain the COVID-19 pandemic. The world has known of the virus since the early days of this year, when reports of outbreaks in China began to emerge. Deeper into the year, reports of confirmed cases in the United States became more frequent. But even as of early March, there were no confirmed cases in Wisconsin. That changed around the second week of March, 2020. Since then,

the numbers have climbed steadily. As of this writing, there have been 16,974 confirmed cases of the virus in the state, all identified in the last two and a half months. 550 people have died. https://www.dhs.wisconsin.gov/covid-19/index.htm. Over 100,000 Americans have died. https://www.nytimes.com/interactive/2020/05/24/us/us-coronavirus-deaths-100000.html. There have been confirmed cases in local jails, including the Waukesha County Jail where the defendant is detained. There have been many confirmed cases, and deaths, in Bureau of Prisons facilities. Municipalities, counties and states across the country are working to reduce the number of individuals confined in jails and prisons by releasing people with limited time left on their sentences, or low-level offenders or people charged with non-violent offenses. See, *e.g.*, https://www.prisonpolicy.org/virus/virusresponse.html.

The virus has impacted every facet of life. The President has declared a state of emergency. Schools and businesses have closed. Hospitals have been inundated. Unemployment has skyrocketed. Working from home has become the new normal, along with social distancing, liberal use of hand sanitizer (when one can get it) and the wearing of masks.

The defendant's concerns about exposure to the virus are rational, reasonable and completely understandable. Doubtless almost every detainee in any jail or prison shares those concerns to some degree. That concern, of itself, is not sufficient to justify release; if it were, jails and prisons would be empty.

So the court looks to the defendant's specific circumstances. The Centers for Disease Control have identified groups of people who are at higher risk for severe illness if they are infected with the virus. https://www.cdc.gov/coronavirus/2019-ncvo/need-extra-precautions/people-at-higher-risk.html. Those groups include:

- People 65 years and older;
- People who live in a nursing home or long-term care facility;
- People with chronic lung disease or moderate to severe asthma;
- People who have serious heart conditions;
- People who are immunocompromised (including people receiving cancer treatment, smokers, bone marrow or organ transplantation, immune deficiencies, poorly controlled HIV or AIDS, and prolonged use of corticosteroids and other immune weakening medication);
- People with severe obesity (BMI of 40 or higher);
- People with diabetes;
- People with chronic kidney disease undergoing dialysis; and
- People with liver disease.

The defendant does not appear to fall into any of these groups. He is forty-seven years old. While he indicates in his motion that he has "suffered from asthma since his pre-teen years," dkt. no. 61 at 4, the only reference to asthma the court can find in the record is the defendant's statement to the pretrial services officer at the time of his original arrest that he had asthma, dkt. no. 2 at 3. Nowhere does even the defendant describe his asthma as

6

"severe." The defendant says in his motion that he used an inhaler in the past and asserts that the medicine in an inhaler "typically" contains corticosteroids (which can reduce immune function), but also says he hasn't had an inhaler since 2010. Dkt. No. 61 at 4-5. While he indicates that he has had asthma attacks while in custody, id. at 5, he appears not to have shared that with the presentence writer and the medical records recounted in the PSR make no mention of asthma, dkt. no. 67 at ¶¶191-198.

The defendant recounts numerous medical issues—high blood pressure, high cholesterol, gastroesophageal reflux disease, degenerative disk disease, elevated triglyceride levels, abnormal breast tissue swelling (a hormonal disorder) and sleep apnea. Dkt. No. 61 at 5. None of these are on the CDC's list, but the defendant argues that his hypertension and high cholesterol put him at higher risk for severe illness if infected. Id. The CDC indicates that "[a]lthough many people who have gotten severely ill from COVID-19 have high blood pressure, they are often older or have other medical conditions like obesity, diabetes, and serious heart conditions that place them at higher risk of severe illness from COVID-19." https://www.cdc.gov/coronavirus/2019-ncov/faq.html#COVID-19-and-Hypertension. (The defendant cites a source on the CDC web site which he says indicates says that hypertension may be an indicator of heart disease, and may be a stronger indicate when coupled with high cholesterol. Dkt. No. 61 at 5 n.2. The court could not find that representation in the cited source, but even if it is true, the defendant has not

7

claimed he has a heart condition and the medical records provided to probation didn't reveal one.)

The PSR indicates that the defendant *was* treated with steroid injections after his 2007 car accident. Dkt. No. 45 at ¶¶193, 197. While it depends on the type of steroid, the dose and the length of treatment, one possible side effect of steroids is "[l]ower resistance to infection." https://my.clevelandclinic.org/health/drugs/4812-corticosteroids. Not everyone who takes steroids suffers from side effects, particularly if the injections are occasional. Id.

Having no medical expertise, the court cannot credibly say that the defendant might not be at a slightly elevated risk for more severe illness if infected with COVID-19 due to his asthma and the fact that he has been treated with steroids in the past.

The defendant also argues that the conditions in the Waukesha County Jail put him at higher risk of infection. He argues that the measures the jail has taken fall "way short" of the CDC's guidelines for correctional facilities, and that the jail is not being truthful with the government about the precautions it claims to be taking. Dkt. No. 61 at 13-15. Defense counsel indicates that he has two clients in the jail, both of whom reported at the time of the motion that the jail had changed almost nothing since the epidemic began. Id. at 15-18. In his reply brief, the defendant indicates that the jail since had posted signs about the virus, but that there remains no social distancing, no instruction about hygiene, no increased cleaning, no masks. Dkt. No. 70 at 3-5. He also

8

asserts that inmates are exposed to people from the outside—from canteen workers to judges and court staff—who do not wear masks. Id.

The court has been informed by the U.S. Marshal Service that the jail is "screening" staff and contract employees, and that as of May 23, 2020, it began providing surgical masks to inmates. The defendant disputes the government's view that the jail is engaged in strenuous mitigation efforts. The court has not been inside the jail and does not know. It accepts for the purposes of this motion the defendant's argument that not much in the way of recommended hygiene practice is going on at the jail, and suspects that even with effort, it is hard to keep inmates—who are, by definition, confined in enclosed spaces with lots of other people—socially distanced.

Again, however, every inmate in the Waukesha County Jail faces these same conditions. If conditions in the jail were sufficient to justify release, it would be empty. The question is whether the fact that the defendant may be at somewhat higher risk of severe illness if infected shifts the balance. The answer to that question must be no, given the other factor the court must consider—the circumstances that led to the defendant's detention in the first place.

The factual recitation in the PSR, and the letters from victims and their families, paint a picture of a violent, controlling man. Victims described being choked, having their heads slammed into furniture, committing acts of self-injury at the defendant's demand. The defendant has contested many of these allegations, in some cases denying that the injuries occurred, in some arguing that they were the result of consensual sadomasochistic relationships and in

9

some cases arguing that the women themselves volunteered to take the actions. Dkt. No. 68. He claims not to have known the victim of Count V of the second superseding indictment was a juvenile (and the victim admits she lied to him about her age). Id. The court will resolve these disputes at sentencing. But the fact remains that a number of different woman have reported being physically and sexually abused by the defendant, as well as being used by him for financial gain. He faces a mandatory minimum sentence and presumptive detention. He admitted in his plea agreement having used women for financial gain for years. Dkt. No. 47 at 14-15. Since being incarcerated, he has bragged to other inmates about violence toward women, dkt. no. 64 at 7-9; while the defendant claims that the statements were "braggadocious" and constituted "false bravado," and while he alleges that the people to whom he made the statements were snitches, he has not denied the statements, dkt. no. 70 at 8.

If the court analyses all of this under §3142(i) (even though it agrees with the government that this is not really the applicable statute), the court cannot find that the defendant has presented a "compelling reason" for temporary release. If the court analyses all of this under §3143, the defendant has not shown by clear and convincing evidence that he is not a danger to the community (even if he could show that he was likely to prevail on a motion for new trial or acquittal or that the government was not going to request a sentence of incarceration).

The court does not mean to trivialize the defendant's concerns about the virus. His concerns, and those of his fellow inmates, are justified. But concerns alone cannot justify release under these circumstances.

Finally, the court notes that under the CARES Act and General Order 20-6, the court can conduct sentencings via video if the defendant consents. If the defendant would like to resolve his case, counsel may file a request for a video sentencing.

The court **DENIES** the defendant's motion to reopen the detention hearing. Dkt. No. 61.

Dated in Milwaukee, Wisconsin this 29th day of May, 2020.

BY THE COURT:

_____
**HON. PAMELA PEPPER**
**Chief United States District Judge**